UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GILBERT V. ANDRY, IV AND ALICIA C. ANDRY | CIVIL ACTION |
| VERSUS | NO. 06-3187 |
| AUDUBON INSURANCE COMPANY, ET AL | SECTION "N" (4) |

## <u>ORDER AND REASONS</u>

Before the Court is the "Motion to Remand and for Attorney's Fees and Costs" (Rec. Doc. No. 43) filed by Plaintiffs, Gilbert V. Andry, IV and Alicia C. Andry.  This matter was removed from the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, by Defendant Nationwide Property and Casualty Insurance Company ("Nationwide") on June 19, 2006. Nationwide, Audubon Insurance Company ("Audubon"), Paul D. Colman ("Colman"),  Fara Adjusting Services, Inc. ("Fara"), and Mississippi Windstorm Underwriting Association ("MWUA") oppose Plaintiffs' motion (Rec. Docs. 56, 57, 58, 59, and 60).

The Court has reviewed the motion, along with the supporting and opposing memoranda. For the reasons stated herein, Plaintiffs' motion is **GRANTED**, and this matter is **REMANDED** to the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.

# I.  <u>BACKGROUND</u>

In July 2005, Plaintiffs, citizens of Louisiana, purchased a home located at 226 West Beach Boulevard in Pass Christian, Mississippi.  During 2005, Plaintiffs had three insurance policies on the home:  (1) a homeowner's policy issued by Nationwide, (2) a federal flood policy issued by the federal government through  Nationwide,[1] and (3) a wind/hail policy issued by MWUA through its servicing insurer, Audubon.[2]

Plaintiffs allege that their home was destroyed when Hurricane Katrina made landfall on the Mississippi Gulf Coast on or about August 29, 2005.  According to Plaintiffs, the hurricane winds and tornadoes blew their home away, causing a total loss.      In the first or second week of September 2005, Plaintiffs made a claim for coverage under the MWUA wind/hail policy[3]  with Audubon, which in turn, hired Fara to adjust the claim.  Plaintiffs provided Audubon and Fara with proof of loss.  Plaintiffs allege that Audubon and Fara significantly undervalued their losses and failed to pay

---

[1]      Plaintiffs do not seek recovery under their flood insurance policy.

[2]      The Mississippi Windstorm Underwriting Association (MWUA) was established by the Mississippi legislature in 1970 to provide property insurance for coverage against windstorms and hail to residents of the Mississippi Gulf Coast.  Miss. Code Ann. §§ 83-34-1 to 83-34-29 (Rev. 2002).  MWUA operates according to a plan of operation and is authorized by the legislature to promulgate rules for implementation, subject to the approval of the insurance commissioner.  MWUA operates as an unincorporated association, consisting of all insurance companies authorized to write and engaged in writing property insurance on a direct basis within the State of Mississippi.  Under MWUA's plan of operation, MWUA, rather than the member company, is responsible for the actual issuance of the windstorm policy.  Once MWUA decides a policy should issue, a member company acts as a servicing insurer and provides service on the policy, for instance, by adjusting the policyholder's claims.  In this case, the servicing insurer was Audubon, which, in turn, hired Fara to adjust Plaintiffs' claim after Hurricane Katrina.

[3]      The MWUA/Audubon policy language states that the company is not liable for "loss caused by, resulting from, contributed to or aggravated by any of the following ..." and specifically lists water damage as an excluded event.  (Not. of Removal, Ex.1, p.5)  Water damage is defined as "flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not."  (*Id.*)

2

policy limits.  Plaintiffs contend that Audubon and Fara improperly determined Plaintiffs' covered losses based only on damages to the home  above a nonexistent water line when the actual cause of the loss, according to Plaintiffs, was wind.

Plaintiffs also made a claim for coverage under their homeowner's insurance policy with Nationwide and provided Nationwide with proof of loss.  Nationwide denied Plaintiffs' claim after concluding that the loss was caused by water, which was excluded by the policy.[4]  Plaintiffs contend that wind caused their loss and that there is no evidence that water and tidal surge caused their loss. As a result of these events, Plaintiffs brought this action against the insurers, adjusters, and engineers associated with their claims.[5]

Plaintiffs further contend that Audubon breached the contract of insurance under Mississippi law in that it failed to properly evaluate the claim, failed to properly adjust the claim, failed to timely

---

[4]     The Nationwide policy language states that it covers "accidental direct physical loss to property ... caused by ... windstorm or hail."  (Not. Removal, Ex.3 at 31)  However, under a section titled "Property Exclusions" the policy language states that Nationwide does not insure "loss to any property resulting directly or indirectly from any of the following ... even if another peril or event contributed concurrently or in any sequence to cause the loss" and specifically lists "water or damage caused by water-borne material" as an excluded event.  (*Id.* at 32)  Water damage is defined as "flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind."  (*Id.*)  The policy also contains a hurricane deductible endorsement which covers "loss or damage caused by the peril of windstorm during a hurricane," including "damage to a building's interior or property inside a building, caused directly by rain, snow, sleet, hail, sand or dust if direct force of the windstorm first damages the building causing an opening through which the above enters and causes damage."  (*Id.* at 47)  The policy language goes on to state that the hurricane deductible "applies whether or not other causes or events contribute concurrently or in any sequence to the loss."  (*Id.*)  In the letter denying coverage to Plaintiffs, Nationwide referenced the provision in the hurricane deductible endorsement stating that "[h]urricane coverage does not include loss caused by flooding, including but not limited to flooding resulting from high tides or storm surge."

[5]     Defendant Rimkus is the engineering company hired by Audubon and/or MWUA.  Defendant Colman is the branch manager of Rimkus.  Defendant Haag is the engineering company hired by Nationwide.

adjust the claim, and failed to pay policy limits.  Plaintiffs also argue that Audubon's conduct was arbitrary and negligent and that it completely disregarded Plaintiffs' rights.  Plaintiffs contend that Audubon implemented improper and arbitrary guidelines for evaluating the claim, failed to follow the law, negligently adjusted the claim, committed fraud and collusion, and breached a duty of good faith.

Plaintiffs allege that Fara conspired with the insurers to arbitrarily and capriciously refuse and/or delay the payment of insurance proceeds, failed to objectively evaluate the claim, failed to properly adjust the claim, and committed fraud; that Fara improperly acquiesced in following improper guidelines implemented by Audubon to Plaintiffs' detriment; and that Fara's conduct was arbitrary and negligent and that it completely disregarded Plaintiffs' rights.

Plaintiffs allege that Nationwide breached the contract of insurance under Mississippi law in that it failed to properly evaluate the claim, failed to properly adjust the claim, failed to timely adjust the claim, and failed to pay policy limits.  Plaintiffs contend that Nationwide failed to pay the policy limits based on an arbitrary, out-of-context reading of the policy, and that Nationwide's conduct was arbitrary and negligent and that it completely disregarded Plaintiffs' rights.  Plaintiffs contend that Nationwide implemented improper and arbitrary guidelines for evaluating the claim, failed to follow the law, negligently adjusted the claim, committed fraud and collusion, and breached a duty of good faith.

Plaintiffs allege that Rimkus, pursuant to instructions from Audubon and MWUA, generated a fraudulent report concluding that water, not wind, destroyed Plaintiffs' home.  Plaintiffs allege that Haag, pursuant to instructions from Nationwide, generated a fraudulent report indicated that water

4

and tidal surge caused Plaintiffs' loss.  Plaintiffs contend that Rimkus and Haag failed to consider the rights of Plaintiffs, failed to follow the law, failed to objectively evaluate the destruction of Plaintiffs' home, and committed fraud and collusion.

Nationwide removed the case to this Court alleging  that the Louisiana defendants[6] were fraudulently joined so as to defeat removal.  In support of this argument, Defendants argue first that Plaintiffs sued Audubon Insurance Group, a trade name, rather than Audubon Insurance Company, a legal entity, and thus, Audubon's citizenship cannot be considered for purposes of diversity jurisdiction.  Second, Defendants argue that even if Audubon is found to have been properly named, Plaintiffs cannot state a claim against either of the Louisiana defendants because they are not parties to the contract of insurance.  Defendants contend that under Mississippi law, as agents on behalf of a disclosed principal, MWUA, neither Audubon nor Fara can be held liable on the contract or for a breach of the fiduciary duty of good faith.  Third, Defendants argue that even if Plaintiffs stated cognizable claims against the Louisiana defendants, those claims do not belong as part of this lawsuit because they are not sufficiently connected to the claim against Nationwide.  Defendants also assert that this Court has federal question jurisdiction over this case because Plaintiffs' claims implicate the National Flood Insurance Program.  Plaintiffs have moved to remand, contending that the Louisiana defendants were not fraudulently joined and that none of Plaintiffs' claims arise under

---

[6]      "Louisiana defendants" refers to Audubon Insurance Company and Fara Adjusting Services, both of which are domiciled in Louisiana.

federal law.  Thus, the question in this case is whether there is federal subject matter jurisdiction due to the presence of either diversity of citizenship under 28 U.S.C. § 1332, or a federal question under 28 U.S.C. § 1331.

## II.  LAW AND ANALYSIS

### A.  Legal Standard

#### 1.  Removal

Generally, a defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  Pursuant to 28 U.S.C.§ 1332, the district courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000, exclusive of interests and costs, and that are between citizens of different states.  For diversity jurisdiction to attach, there must be complete diversity, *i.e.* the citizenship of every plaintiff must be diverse from the citizenship of every defendant.  *Strawbridge v. Curtiss*, 7 U.S. Cranch 267 (1806).

In removal actions, the removing party bears the burden of establishing the existence of federal jurisdiction.  *See De Aguilar v. Boeing Co*., 47 F.3d 1404, 1408 (5th Cir. 1995).  In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed.  *See, e.g., Manguno v. Prudential Property and Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002).  The Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C.  §  1447 (c).

## 2. Fraudulent Joinder

The standard for determining when a defendant has been fraudulently joined is well-established in the Fifth Circuit. To demonstrate fraudulent joinder, the party seeking removal must show the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Central Railroad Co*., 252 F.3d 220, 222-23 (5th Cir. 2003); *see also B., Inc. v Miller Brewing Co*., 663 F.2d 545, 549 (5th Cir. 1981). Courts examine "[i]f there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Smallwood*, 352 F.3d at 223 (*citing Jernigan v. Ashland Oil Inc*., 989 F.2d 812, 816 (5th Cir. 1993)). Furthermore, the Fifth Circuit has stated that "[i]f the plaintiff has *any* possibility of recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent in fact or law. *Rich III v. Bud's Boat Rentals, Inc*., 1997 WL 785668, *2 (E.D. La. 2003) (*citing Burden v. General Dynamics Corp*., 60 F.3d 213, 216 (5th Cir. 1995)) (emphasis added).

A party is considered fraudulently joined when the plaintiff has not or can not state a claim for relief against the individual or entity under the applicable substantive law or does not intend to secure a judgment against that defendant. *Englande v. Glaxo Smithkline*, 206 F.Supp.2d 815, 817 (E.D. La. 2002) (*citing Erdey v. American Honda Co., Inc*., 96 F.R.D. 593, 595 (M.D. La. 1983)). The key inquiry to a claim of fraudulent joinder is whether the facts as alleged support the plaintiff's substantive claims against the non-diverse defendants. *Englande*, 206 F.Supp.2d at 819 (*citing B., Inc*., 663 F.2d at 545). To determine whether jurisdiction is present for removal, courts consider the claims in the state court petition as they existed at the time of removal. *Englande*, 206 F.Supp.2d at 819 (*citing Cavallini v. State Farm Mut. Auto Ins. Co*., 44 F.3d 256, 264 (5th Cir. 1995)). Any

ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Acuna v.Brown & Root, Inc*., 200 F.3d 335, 339 (5th Cir. 2000). Because the fraudulent joinder doctrine is a narrow exception to the rule that diversity jurisdiction requires complete diversity, the "burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *B., Inc.*, 663 F.2d at 549. Thus, in determining the validity of an improper joinder claim, "the district court 'must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (*quoting B., Inc.*, 663 F.2d at 549).

### 3. Federal Question Jurisdiction

Federal district courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Whether a claim arises under federal law must be determined by referring to the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (*citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)); *Howery v. Allstate Ins. Co*., 243 F.3d 912, 916 (5th Cir. 2001). This means that the federal question must appear on the face of the complaint. *See Torres v. Southern Peru Copper Corp*., 113 F.3d 540, 542 (5th Cir. 1997). Because defendants may remove a case to federal court only if the plaintiffs could have brought the action in federal court from the outset, "the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow*, 478 U.S. at 808. "The fact that a federal defense may be raised to the plaintiff's action ... will not suffice to create federal question jurisdiction." *Aaron v. National Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.2d 1157, 1161 (5th Cir. 1989), *citing Franchise Tax Bd.*, 463 U.S. at 12. Thus,

the general rule provides that a federal defense to a state law claim does not create removal jurisdiction.

## B.  Discussion

### 1.  Fraudulent Joinder

Defendants argue that Audubon and Fara were improperly joined solely for the purpose of defeating diversity jurisdiction.  The relevant question is thus whether Defendants have shown that there is no reasonable possibility of recovery against either of the Louisiana defendants in state court.  Defendants' first argument is that Plaintiffs have sued "Audubon Insurance Group" rather than "Audubon Insurance Company."  In their oppositions to the motion to remand, Defendants repeatedly insist that "Audubon Insurance Group" is a trade name rather than a legal entity and as such, Audubon's citizenship cannot be considered for purposes of diversity jurisdiction.  While it is true that Plaintiffs refer to Audubon as "Audubon Insurance Group" several times in their petition, the Court notes that in paragraph one of the petition, Plaintiffs specifically name "Audubon Insurance" as a defendant.  Paragraph 1.A. of Plaintiffs' petition reads as follows:

Made defendants herein are:

A.      Audubon Insurance, a domestic insurance company, with its principal place of business in the city of Baton Rouge, Parish of East Baton Rouge, State of Louisiana.

(Pet. ¶ 1).

The Court finds that naming "Audubon Insurance" as a defendant is tantamount to naming "Audubon Insurance Company" as a defendant.  The Court declines to rule that the mere omission of the word "Company" at the end of "Audubon Insurance," means that Plaintiffs did not actually

sue Audubon Insurance Company.  However, Defendants point out that Plaintiffs refer to Audubon as "Audubon Insurance Group" in both the caption and in the body of the petition.  The Court finds that Plaintiffs' occasional referral to Audubon Insurance Company as "Audubon Insurance Group" in the body of the petition and in the caption  is not fatal to prosecution of Plaintiffs' suit against Audubon.

Under Fifth Circuit jurisprudence, parties may correct a misnomer in pleadings by substituting the correct legal name of a party for its trade or assumed name, particularly where the party served uses the trade or assumed name or has otherwise contributed to the error.  *Montalvo v. Tower Life Building*, 426 F.2d 1135 (5th Cir. 1970).  In *Montalvo*, the court rejected the assertion of Tower Life Insurance Company that use of its trade name "Tower Life Building" in the original complaint was fatal to prosecution of the suit against the Company.  *Id.* at 1137, 1146.  The court allowed an amendment of the complaint to reflect the Company's correct legal name, noting that the Company had operated under the trade name, both with the public and the plaintiffs.  *Id.* at 1137, 1147.  The court concluded that if it was a mistake for the plaintiffs to name the Building as a party, then the Building and the Company had contributed to the  mistake.  *See also Hendrix v. Memorial Hospital of Galveston County*, 776 F.2d 1255, 1257-58 (5th Cir. 1985) (allowing amendment from "Memorial Hospital of Galveston County Auxiliary" to "Memorial Hospital of Galveston County" where true defendant was not prejudiced and knew or should have known that but for plaintiffs' mistake, it would have been named originally).  Even where the party has not contributed to the misnomer, the Fifth Circuit has allowed the correction of a misnomer, stating:

> The test should be whether, on the basis of an objective standard, it is reasonable to conclude that the Plaintiff had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether plaintiff actually meant to serve and sue a different person.

*Grandey v. Pacific Indemnity Company*, 217 F.2d 27, 29 (5th Cir. 1954).

There is ample evidence in this case that Audubon Insurance Company does business as Audubon Insurance Group.  For example, the "Claims" section of MWUA's website lists "Audubon Insurance Group" as "Current Servicing Insurer."[7]  Additionally, upon clicking on the "Policy Inquiry" section of MWUA's homepage, one is directed to a login page displaying the name "Audubon Insurance Group" in the margin.  The smaller print at the bottom of the login page states that "[t]he Audubon Insurance Group is a member of...American International Group, Inc."  Finally, "The Audubon Insurance Group" is printed upper right hand corner of the declaration page of Plaintiffs' MWUA policy.  Therefore, the Court finds that Audubon Insurance Company does business as Audubon Insurance Group with both the public and the Plaintiffs.

Moreover, Audubon Insurance Company has acknowledged in a prior case in this Court that it does business as Audubon Insurance Group.[8]  *Orrill v. AIG, et al*, 05-6071 (E.D. La. 2005).  The Court notes that the same counsel representing Audubon in this action also represented Audubon in *Orrill*.  In that case, Audubon Insurance Company joined in removing a state court suit to the

---

[7]    http://www.msplans.com/MWUA/Index.htm

[8]    It is also necessary to point out, in light of apparent confusion on the part of Defendants regarding the usage of the acronym "AIG," that the Court finds that when Plaintiffs named "AIG Insurance Company" as a defendant in their original petition, they were referring to "American International Group, Inc," rather than "Audubon Insurance Group."  American International Group is the parent company of Audubon.  Furthermore, even if Plaintiffs had been referring to "Audubon Insurance Group" when they used the acronym "AIG," the Court finds, as stated above, that both Plaintiffs and Defendants understood that Audubon Insurance Company and Audubon Insurance Group are one and the same.

Eastern District of Louisiana.  In its notice of removal, Audubon Insurance Company joined in removal as "Audubon Insurance Company d/b/a Audubon Insurance Group," and stated that it is a "corporation organized and existing under the laws of the State of Louisiana and maintains its principal place of business in Louisiana." (Civil Action No. 05-6071, Rec. Doc. No. 1 at 2).  Thus, the Court finds that Audubon Insurance Company  has operated under the trade name "Audubon Insurance Group" not only with the public and the Plaintiffs, but also with this Court.  Therefore, the Court concludes that any mistakes Plaintiffs may have made in their naming of Audubon were contributed to by Audubon.  Furthermore, the Court finds it significant that Audubon Insurance Company has not alleged that it was not served. Therefore, it is reasonable to conclude that Plaintiffs had in mind a particular entity, Audubon Insurance Company, that they merely made a mistake as to the name when they referred to Audubon Insurance Company as Audubon Insurance Group, and that they actually served the entity intended.  *See Grandey*, 217 F.2d at 29; *see also* Fed. R. Civ. P. 4(h).  Thus, the Court finds that prosecution of Plaintiffs' suit against Audubon Insurance Company and the consideration of Audubon's citizenship for diversity purposes are not precluded.

Defendants' second argument in support of fraudulent joinder is that under Mississippi law, Plaintiffs have no possibility of recovery against the Louisiana defendants because they were not parties to the contract of insurance but rather acted as agents of MWUA.  Under Mississippi law, an agent of a disclosed principal is not a party to his principal's contract and cannot be liable for its breach. *Jabour v. Life Ins. Co. of North America*, 362 F.Supp. 2d 736, 740-41 (S.D.Miss.2005).  *See also Jenkins v. Farmington Cas. Co.*, 979 F.Supp. 454, 457 (S.D.Miss.1997) (agent who is not party to insurance contract is not liable for payment of contractual benefits).  Similarly, [an agent], as a

12

non-party to the contract ha[s] no implied duty of good-faith and fair-dealing with regard to the performance of the contract and thus, cannot be liable under a bad-faith theory of recovery. *Jabour*, 362 F.Supp.2d at 736.

Under MWUA's plan of operation, a servicing insurer is "an insurer who enters into an agreement with the Association to provide and service policies on risks referred to it by the Association." Although insurers like Audubon Insurance Company may issue policies in their own right, that is not their role with MWUA policies. As an agent or servicing insurer of MWUA, Audubon Insurance Company provides service on MWUA policies; such service includes issuing policies on behalf of MWUA, adjusting claims, and supervising claims.[9] The Court concludes that Audubon, as a servicing insurer, was acting as an agent of MWUA. Accordingly, the Court finds that Plaintiffs' breach of contract and bad faith theories of recovery do not present viable claims for relief against Audubon under Mississippi law.

The relevant question then becomes whether Plaintiffs have demonstrated *any* possibility of recovery under Mississippi law for conduct on the part of either Audubon or Fara constituting an independent tort. An agent may incur liability under Mississippi law independent of the insurance contract for conduct which is grossly negligent, malicious, or which shows a reckless disregard for the rights of the insured. *Bass v. California Life Ins. Co*., 581 So.2d 1087, 1089 (Miss. 1991). "In other words, agents for insurance companies can be held liable for conduct that constitutes an independent tort." *Jabour*, 362 F.Supp.2d at 741 (*citing Gallagher Bassett Servs., Inc. v. Jeffcoat*,

---

[9]      *See* Audubon's Opp. Mot. Remand, Ex.2 (Affidavit of Robert P. Hubbard, Senior Vice President for Audubon Insurance Company).

887 So.2d 777, 785 (Miss.2004)).  An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim.  *Banker's Life & Casualty Co. v. Crenshaw*, 483 So.2d 254, 272, 276 (Miss.1985).  However, an adjuster is not liable for simple negligence in adjusting a claim.  *Leathers v. Aetna Casualty & Surety Co.*, 500 So.2d 451 (Miss.1986); *Consolidated American Life Ins. Co. v. Toche*, 410 So.2d 1303, 1305 (Miss.1982).  He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured.  *Davidson v. State Farm Fire and Casualty Co.*, 641 F.Supp. 503, 510 (N.D.Miss.1986); *Leathers v. Aetna Casualty & Surety Co.*, 500 So.2d at 453; *Progressive Casualty Ins. Co. v. Keys*, 317 So.2d 396, 398 (Miss.1975).

Audubon, as a servicing insurer, adjuster, claims administrator/supervisor, agent, or other similar entity, had a duty under *Bass* to investigate all relevant information and make a realistic evaluation of Plaintiffs' claim.  The Court finds that the facts alleged in Plaintiffs' petition suggesting Audubon's involvement in investigating and adjusting the claim amount to more than mere conclusory allegations.  *See Peters v. Metropolitan Life Ins. Co.*, 164 F.Supp.2d 830, 834 (S.D.Miss.2001) (holding that allegations against non-diverse defendants "must be factual, not conclusory, because conclusory allegations do not state a claim").

Plaintiffs allege that the Fara adjuster, Darrell Ryan, indicated upon inspection of Plaintiffs' property that the policy limits were exhausted (Pet. ¶ 29) but that he was forced to follow Audubon's guidelines in adjusting the claim (Pet. ¶ 32).  According to the petition, "Audubon instructed Mr. Ryan to "find a waterline anywhere he could in the area of Plaintiffs' home ...  and transfer that waterline and make an imaginary waterline where Plaintiffs' home used to be and to pay Plaintiffs

from that waterline up and not from the waterline down."  (Pet. ¶ 35.)  According to Plaintiffs, the value placed on the property was set by Audubon, such value was used as a basis for calculating the premium, the property was a total loss, and no different method of computation of such loss was set forth in the policy.  (Pet. ¶ 52.)  Plaintiffs further assert that "Audubon instructed Fara to conclude that water, not wind, destroyed plaintiffs' home, despite no supporting evidence, and Fara did as instructed, to the detriment of the insured."  (*Id.*)  Despite policy limits of $650,000 and the fact that the hurricane winds "blew plaintiffs' home away," (Pet. ¶ 17) plaintiffs received a suggested estimate for replacement of $265,000.00 (Pet. ¶ 30).   Plaintiffs contend that Mr. Ryan stated that "such an arbitrary low value was obviously wrong and shocked the conscience." (Pet. ¶ 33.) Plaintiffs allege that Mr. Ryan provided Audubon and Fara with copies of a letter from Mr. Andry regarding the deficiencies of the estimate, along with bids from three contractors regarding the minimum replacement cost per square foot of Plaintiffs' home.  (Pet. ¶ 43.)  However, according to Plaintiffs, Audubon and/or Fara told Mr. Ryan not to use that information in adjusting the claim but rather to use the procedure of finding a waterline and calculating an estimate with  an adjusting computer program.  (Pet. ¶ 44.)  Plaintiffs allege that the waterline used to assess the amount to be paid to plaintiffs was from a building located more than 300 feet from plaintiffs' property.  (Pet. ¶ 36.)  Mr. Ryan complied with these instructions and came up with a new estimate valued at approximately $388,000, which was tendered.  (Pet. ¶ 45.)  Plaintiffs further allege that "[t]he properties on either side of plaintiff's home were paid policy limits by Audubon based upon wind destroying their homes."  (Pet. ¶ 53.)

Based upon the above allegations, the Court finds that plaintiffs' well-pled petition sets forth sufficient facts indicating the possibility of recovery against Audubon under Mississippi law. Therefore, because any ambiguities are strictly construed in favor of remand, the Court finds that Audubon Insurance Company was not fraudulently joined.  Because the existence of one non-diverse defendant who is properly joined to the action defeats diversity jurisdiction, it is unnecessary for the Court to determine whether Fara was fraudulently joined.[10]

Defendants further argue that to the extent that Plaintiffs have any viable claim for fraud, the petition fails to plead fraud with the requisite particularity under Rule 9 of the Federal Rules of Civil Procedure and should therefore be dismissed.  The Court finds that this argument has no merit.

> The failure to satisfy Rule 9(b) does not mean that the court should ignore altogether a claim of fraud.  The removing defendants cite to no case (nor has the court found one) in which the particularity requirements of Rule 9(b) were used to invalidate a fraud claim which would otherwise prevent removal.  It seems odd to encumber a plaintiff who originally filed in state court with the burden of satisfying a technical *federal* pleading rule in order to obtain a remand.  This is especially true since the propriety of remand is determined only at the time that the petition for removal is filed, *Brown v. Southwestern Bell Tel. Co*., 901 F.2d 1250, 1254 (5th Cir. 1990), permitting no amendment to satisfy Rule 9(b).  Moreover, the appropriate remedy for Rule 9(b) violations is rarely dismissal.  *Massey-Ferguson, Inc. v. Bent Equipment Co*., 283 F.2d 12, 15 (5th Cir. 1960).  This leaves much room to doubt the proposition that the court should ignore fraud allegations that do not satisfy Rule 9(b).

*Grynberg Production Corp. v. British Gas, p.l.c.*, 817 F.Supp. 1338, 1348 (E.D. Tex. 1993).

---

[10]     However, the Court notes that under the *Bass* standard, while an adjuster cannot be held liable for simple negligence in adjusting a claim, Plaintiffs have set forth sufficient facts alleging that Fara breached its duty as an adjuster to investigate all relevant information and to make a realistic evaluation of a claim, particularly when one considers Mr. Ryan's statements regarding the use of an imaginary waterline in evaluating Plaintiffs' claim.  *See Banker's Life & Casualty Co. v. Crenshaw*, 483 So.2d 254, 272, 276 (Miss.1985). Accordingly, resolving all of the factual allegations in the light most favorable to the Plaintiffs, the Court finds that there is a reasonable basis for predicting that Mississippi state law might impose liability on Fara on these allegations, if proven true.  *See Smallwood*, 352 F.3d at 223.

Defendants also assert that even if Plaintiffs have stated viable claims against the Louisiana defendants, those claims do not belong in this lawsuit because they are not sufficiently related to the claims against the diverse defendants.  The Court finds that this issue has been discussed in detail in *Schwartz v. Chubb & Sons, Inc.*, 2006 WL 980673 (E.D. La. April 11, 2006) and in *Radlauer v. Great Northern Insurance Co.*, 2006 WL 1560791 (E.D. La. May 16, 2006).  Accordingly, the Court incorporates the rationale set forth in those opinions by reference herein and concludes that "it cannot be said that there is not a palpable or real connection between the claims and the parties joined."  *Id.* at 6.

### 3. Federal Question

Nationwide alleges that even if the Court does not find a basis for jurisdiction under 28 U.S.C. § 1332, jurisdiction would still be proper under 28 U.S.C. § 1331.  Nationwide contends that the Plaintiffs' claims necessarily require an interpretation of a standard flood insurance policy ("SFIP") issued by Nationwide as part of its participation in the National Flood Insurance Program ("NFIP"), and this is a domain of exclusive federal jurisdiction under 42 U.S.C. § 4072..  The Court finds no such claims in Plaintiffs' petition, which asserts recovery only under the MWUA wind/hail policy, the Nationwide homeowner's policy, and related Louisiana law.

Nationwide acknowledges that Plaintiffs do not directly seek recovery under a federal flood insurance policy but insists that the petition involves a controversy over the construction and effect of the National Flood Insurance Act.  Because Plaintiffs do not assert any claims under federal law, federal question jurisdiction exists only if an exception to the well-pleaded complaint rule applies. Nationwide argues that the Court should analyze this dispute under the framework set forth in

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313 (2005). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 313.

Nationwide argues that the Court will be required to consult federal law to determine which of Plaintiffs' policies covers damage to their property and to determine "whether federal law even permits Nationwide or MWUA to provide the flood coverage plaintiffs seek." (Nationwide's Opp. Mot. Remand, Rec. Doc. No. 59, at 3.)  In considering the petition, the notice of removal, and the motion to remand, along with the supporting and opposing memoranda, it is apparent to the Court that Nationwide misconstrued plaintiffs' petition in stating that "[p]laintiffs are, in effect, seeking the same recovery they were eligible to obtain under their NFIP policy ." (*Id.* at 8.)  The Court finds no indication in plaintiffs' petition that "plaintiffs are asking this Court to write federal flood insurance into both their MWUA wind/hail policy and their Nationwide homeowner policy." (*Id.*)  It is undisputed that both the MWUA and the Nationwide homeowner's policies exclude coverage for flood damage.  Plaintiffs are not contending that they are entitled to recover where flood water, an excluded peril, was the proximate cause of the total loss to the home.  Plaintiffs are not attempting to "restrict or otherwise invalidate the flood and/or water damage exclusions in those insurance policies." (*Id.* at 17.)  Plaintiffs' claim alleges that they are entitled to the full value of the Nationwide homeowner's policy because the proximate cause of the loss was a <u>covered</u> peril,

i.e., wind.[11]  Thus, Plaintiffs challenge the factual conclusions reached by Nationwide and Audubon in their denial of Plaintiffs' claims rather than the policy exclusions.

The Court fails to see how it might be forced to interpret the National Flood Insurance Act ("NFIA") or the SFIP in order to decide the case or award plaintiffs the relief they seek.   Plaintiffs seek recovery based on the terms of their wind/hail and homeowner's insurance policies and relevant state law, and they do no urge any particular reading of federal law in support of their claims.   The meaning or interpretation of the NFIA, federal regulations, or the SFIP do not appear to be disputed. Furthermore,  "[i]nterpretation of a contract under state law will often involve events, parties, and issues that are otherwise the subject of federal regulation.  A mere tangential relationship to a federal policy cannot be sufficient to bring these claims into federal court."  *Dobson v. Allstate Ins. Co.*, 2006 WL 2078423 (E.D. La., 2006).

---

[11]        Curiously, Nationwide argues in its opposition that the homeowner's policy also excludes coverage for windstorm damage.  "Plaintiffs would have this Court hold that what is covered as flood damage under their flood insurance policy is also covered as windstorm damage under their wind/hail policy, notwithstanding its exclusion for flood, or as somehow covered under their homeowner policy, notwithstanding its exclusion for both flood and windstorm damage."  (Nationwide's Opp. Mot. Remand at 17.) (emphasis added)  However, the policy, which Nationwide attached as an exhibit to its notice of removal, states the exact opposite.  The policy language states that it covered "accidental direct physical loss to property ... caused by ... windstorm or hail."  (Not. of Removal, Ex. 3.) (emphasis added)  Moreover, the policy contained a hurricane deductible endorsement which covered "loss or damage caused by the peril of windstorm during a hurricane," including "damage to a building's interior or property inside a building, caused directly by rain, snow, sleet, hail, sand or dust if direct force of the windstorm first damages the building causing an opening through which the above enters and causes damage."  (*Id.*)  Furthermore, in a letter to Plaintiffs dated March 24, 2006, Nationwide makes no mention of a windstorm exclusion as a reason for denial of coverage, stating that because "it appears that [their] loss was caused by water or water-borne material as defined in [their] policy ... we must deny your claim."  (Not. Removal, Ex. 6.)  In advancing this new argument, Nationwide directs the Court to "Exhibit 2" to its opposition, a document entitled "Windstorm or Hail Exclusion", which purports to be an addendum to Plaintiffs' policy.  The Court finds a determination of the document's authenticity immaterial for purposes of the motion to remand; however, it is worth noting that the words "Sample Copy" are stamped in large bold print across the text of the document.

In addition, the mere possibility of a federal issue arising does not confer federal question jurisdiction. It is impossible to know at this juncture what the evidence will be. It is likely that both the Plaintiffs and Defendants will present expert evidence on the issue of the cause or causes of the damage to the Plaintiffs' property. Depending on the evidence the parties put forth, there of course exists the possibility that the SFIP may become relevant in some form or fashion.[12] For instance, the state court may have to determine the extent to which Plaintiffs' losses would be covered by the SFIP, which creates the possibility that the court would be required to interpret federal statutes and regulations.

> But the possibility of such interpretation does not make the terms of the SFIP an "essential element" of plaintiffs' claim. *Grable* did not overturn the rule that federal question jurisdiction exists only when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S.Ct. at 2368. "The mere presence of a federal issue "does not automatically confer a federal -question jurisdiction." *Merrell Dow*, 478 U.S. at 813, 106 S.Ct. 3229. Since *Grable* was decided, federal courts have repeatedly rebuffed attempts to peg federal jurisdiction on its holding, often because the federal issue allegedly implicated is not "disputed and substantial." *See e.g., McCormick v. Excel Corp.*, 413 F.Supp.2d 967, 970 (E.D. Wis.2006) (the meaning of the crucial term in a federal regulation had already been decided); *Samuel Trading, LLC v. Diversified Group, Inc.*, 420 F.Supp. 2d 885, 892 (N.D.Ill.2006) (though the case might contain a dispute over federal law, the dispute was not substantial because it did not affect plaintiff's right to relief). Any controversy about the provisions of the SFIP would be peripheral to plaintiffs' claims against their insurance agents, which rest entirely on state law. *See Roybal*, 375 F.Supp.2d at 1333 (substantial question of federal law not involved simply because the state court might have to interpret federal law or look to the scope of SFIP coverage to

---

[12]    Nationwide argues that the presence of the "other insurance" clause in the homeowner's policy will require the court to construe both the homeowner's policy and the SFIP to render a judgment because the court "cannot determine 'full coverage' under the homeowner's policies without simultaneously considering the provisions of the SFIP insuring the same property." (Not. of Removal. p. 10.)

20

determine if insurer owed a legal duty under state law to procure the SFIP). Indeed, defendants do not even specify which terms of the SFIP are in dispute. The Court, therefore, does not find that plaintiff's complaint "necessarily raises a federal issue."

*Seruntine v. State Farm Fire & Casualty*, 444 F.Supp.2d 698 (E.D. La. 2006).

Contrary to Nationwide's argument, Plaintiffs do not seek to recover damages for flood damage. Plaintiffs' claims arise in the context of state law; and, if that law is preempted as Nationwide contends, a state court shall so find. That alleged preemption does not create jurisdiction. Nor does the fact that Nationwide may raise the issue of the SFIP as a defense create jurisdiction. The Court finds that it does not have jurisdiction over this case under 42 U.S.C. § 1331.

### 4. Attorney's Fees

In their memorandum in support of their motion to remand, Plaintiffs request attorneys' fees and costs for Defendants' improper removal. The decision whether to award fees and costs is discretionary. *Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir. 1993). "Absent unusual circumstances, courts may award attorney's fees under § 1447( c ) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) (*citing Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004)); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)). This Court exercises its discretion not to grant plaintiffs' request for attorneys' fees and costs.

### III.  CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Plaintiffs' Motion to Remand is hereby **GRANTED** and this action is **REMANDED** to the Civil District Court for the Parish of Plaquemines, State of Louisiana.

New Orleans, Louisiana, this  27th  day of December, 2006.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**